IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

JOSUE GONZALES,

                Petitioner,

      vs.

HAROLD D. GRAHAM,

                Respondent.

No. 9:17-cv-01321-JKS

MEMORANDUM DECISION

       Josue Gonzales, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Gonzales is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Auburn Correctional Facility.  Respondent has answered the Petition, and Gonzales has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

       On March 22, 2012, Gonzales was charged with second-degree murder and second-degree criminal possession of a weapon in connection with the August 2011 shooting of Angel Olmo in a gas station parking lot.  At Gonzales's arraignment, the People noticed its intent to use identification testimony from four witnesses who had identified Gonzales from a photo array.  The defense subsequently moved to suppress the identification evidence, and a *Wade*[1] suppression hearing was held.  At the hearing, the four witnesses were called and five photo

---

[1]     *United States v. Wade*, 388 U.S. 218 (1967).  The term "*Wade* hearing" is a shorthand reference to a pretrial proceeding to determine the admissibility of identification evidence.  *Id.* at 242.

arrays were marked and admitted as evidence.  The defense called no witnesses.  After hearing

oral argument, the court issued a written decision denying the suppression motion.

The defense also moved prior to trial for the court to review the grand jury minutes to

determine if lesser-included crimes should have been charged, if exculpatory evidence had been

withheld from the grand jury, and whether a defense of justification should have been charged.

In response, the court issued a written order concluding that the prosecutor improperly

impeached a recalcitrant witness with his prior written statement, but that this "misconduct" was

not "intentional or malicious" but was "borne of frustration stemming from the obstreperous and

uncooperative behavior of the witness."  Finding that the misconduct was isolated to that

witness, and that there was legally sufficient evidence to support the indictment even without the

testimony of the recalcitrant witness, the court denied Gonzales's motion to dismiss the

indictment.  After the defense orally reargued its dismissal motion, the court again denied the

motion to dismiss the indictment.

Gonzales then proceeded to a jury trial.  During the prosecutor's opening statement, he

said that the "evidence will come in one little piece at time. . . .  You'll hear what the witnesses

saw and heard, see photographs, maps, diagrams, physical evidence, scientific evidence. . . .

And undoubtedly, there will be some questions in your mind that go unanswered."  The People

then presented the testimony of eyewitnesses who testified that they had seen Gonzales and

Olmo in an altercation at a bar on the evening of the shooting.  A witness who had also been at

the bar that evening, Travis Stachurski, testified that he drove to a gas station after the bar

closed, where he saw Gonzales shoot Olmo.

After the People rested its case, the defense moved for a trial order of dismissal on the ground that the People failed to present proof that Gonzales had a weapon or that he was close enough to the victim to have fired the fatal shots.  The court denied the motion.  The defense rested without presenting proof, and renewed the dismissal motion, which the court again denied.

During summation, the prosecution presented certain exhibits, including an autopsy photograph of Olmo.  The prosecutor also argued that the People's witnesses were not less reliable because of their criminal histories or reluctance to testify, and referred to a demonstrative showing a jigsaw puzzle of a gun.

Following deliberations, the jury found Gonzales guilty of second-degree murder and second-degree criminal possession of a weapon.  After being polled at Gonzales's request, the jury was excused, and Gonzales asked to reserve any motions until sentencing.  Prior to sentencing, Gonzales moved to set aside the verdict, arguing that the prosecutor had committed misconduct during opening and summation and that the trial evidence was legally insufficient. The court denied the motion and subsequently sentenced Gonzales to an indeterminate term of 25 years to life imprisonment and a determinate term of 15 years' imprisonment, with five years of post-release supervision on each conviction, to be served concurrently.

Through counsel, Gonzales appealed his conviction, arguing that: 1) the trial court erred by allowing the prosecution to introduce a prior consistent statement of the People's primary witness; 2) the prosecutor committed misconduct in the grand jury proceedings by acting as a witness, usurping the role of the grand jury, and improperly bolstering an eyewitness identification; 3) defense counsel was ineffective for failing to call an expert on identification testimony and for failing to request a missing witness instruction; 4) the verdict was against the

weight of the evidence; 5) the prosecutor committed misconduct at trial by diluting the burden of proof, bolstering the credibility of the People's witnesses, and displaying prejudicial photographs to the jury; 6) the photo array identification procedure was unduly suggestive and deprived Gonzales of a fair trial; and 7) his sentence of 25 years to life imprisonment was harsh and excessive. Gonzales also argued in a *pro se* supplemental brief that: 1) he was denied of his right to be present at all material stages of the trial; 2) his absence from a proceeding during which a jury inquiry was received and answered violated his right to be present; 3) the trial court's failure to solicit unequivocal answers from potential jurors warrants reversal of his conviction; and 4) a reconstruction hearing is required to permit determination of the merit of certain of his claims. The Appellate Division of the New York Supreme Court unanimously affirmed the judgment against Gonzales in a reasoned opinion issued on December 23, 2016. *People v. Gonzales*, 43 N.Y.S.3d 616, 619 (N.Y. App. Div. 2016). The New York Court of Appeals denied leave without comment on June 8, 2017. *People v. Gonzales*, 86 N.E.3d 256, 256 (N.Y. 2017).

Gonzales then timely filed the instant undated *pro se* Petition for a Writ of Habeas Corpus to this Court, which was received and docketed on December 6, 2017. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Gonzales raises the arguments he unsuccessfully raised to the New York state courts on direct appeal through his counseled and *pro se* briefs. Specifically, Gonzales argues that: 1) the trial court erred by allowing the prosecution to

introduce a prior consistent statement of the People's primary witness; 2) the prosecutor committed misconduct in the grand jury proceedings by acting as a witness, usurping the role of the grand jury, and improperly bolstering an eyewitness identification; 3) defense counsel was ineffective for failing to call an expert on identification testimony and for failing to request a missing witness instruction; 4) the verdict was against the weight of the evidence; 5) the prosecutor committed misconduct at trial by diluting the burden of proof, bolstering the credibility of the People's witnesses, and displaying prejudicial photographs to the jury; 6) the photo array identification procedure was unduly suggestive and deprived Gonzales of a fair trial; 7) his sentence of 25 years to life imprisonment was harsh and excessive; 8) he was denied of his right to be present at all material stages of the trial; 9) his absence from a proceeding during which a jury inquiry was received and answered violated his right to be present; 10) the trial court's failure to solicit unequivocal answers from potential jurors warrants reversal of his conviction; and 11) a reconstruction hearing is required to permit determination of the merit of certain of his claims.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it.

*See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court).  In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds.  *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

**A.**     **<u>Evidentiary Error</u>** (Ground 1)

Gonzales first argues that the trial court erred by allowing the People to introduce on redirect examination Stachurski's prior consistent statement.  The record reflects that, on cross-examination, the defense elicited testimony from Stachurski regarding his invocation of the right to remain silent before his grand jury testimony, and also asked Stachurski about how he had to be cautioned in front of the grand jury about the rules regarding contempt before he answered the prosecutor's questions.  The defense likewise elicited testimony that Stachurski learned Gonzales's name from one of the detectives on August 23, 2011, and asked Stachurski if he

recalled telling the grand jury, "I don't know.  I can't remember" and "I was drunk" when asked if he saw Olmo "get shot by a person who was later identified as Josue Gonzales."

Prior to redirect examination and outside the presence of the jury, the prosecutor asked the court for permission to pursue during redirect examination questioning about Stachurski's prior recalcitrance as a witness and his prior identification of Gonzales.  The prosecutor argues, "by asking Mr. Stachurski questions about not knowing Mr. Gonzales' name, about the police telling him Mr. Gonzales' name . . . [the defense] has suggested to the jury in such a way . . . that opens the door . . . for me to ask him on redirect that he did give a description to the police . . . that he did identify the person, and . . . the person he identified was Josue Gonzales."  Over defense objection, the court ruled that the prosecutor could elicit testimony regarding Stachurki's identification of Gonzales prior to being given Gonzales's name by police:

> My understanding is that Mr. Stachurski testified before the grand jury with respect to the issue of the identification of the shooter, that basically, "I don't know" and/or "I don't remember."  It's been brought out on cross-examination by [defense counsel] that during the grand jury presentation that there was a perceived threat, if you will, of the potential prosecution of that witness, Mr. Stachurski, for Criminal Contempt.  The trial testimony of Mr. Stachurski, as I understand it now, is that, in fact, the defendant, Mr. Gonzales, was the shooter and he identifies Mr. Gonzales as the shooter.  Prior to the grand jury testimony, which was, again, "I don't know," "I don't remember" — prior to the grand jury testimony my understanding is there was a statement that [the prosecutor] now seeks to introduce that . . . allegedly made by this witness to the police implicating Mr. Gonzales as the shooter which was given, obviously, prior to grand jury testimony.  That original statement was given prior to the threat of prosecution regarding Criminal Contempt.  The prior consistent statement he, Mr. Gonzales, was the shooter, predates the event which was brought up on cross-examination, the contempt prosecution as the alleged cause of the motive to slant the trial testimony. . . .  For those reasons and the reasons previously discussed on the record I will allow that course of redirect examination.

On direct appeal, counsel argued that the trial court's evidentiary ruling was erroneous.

The Appellate Division disagreed:

Contrary to [Gonzales's] contention, the court did not err in allowing the prosecutor to introduce, on redirect examination, the prior consistent statement of a prosecution witness.  Even assuming, arguendo, that the court erred in allowing the prior consistent statement under the rationale that the trial testimony of the witness was "assailed-either directly or inferentially-as a recent fabrication" by defense counsel on cross-examination (*People v. McDaniel*, 81 N.Y.2d 10, 18, 595 N.Y.S.2d 364, 611 N.E.2d 265), we conclude that the court properly determined, as a second rationale, that defense counsel had opened the door to that testimony on cross-examination (*see People v. Melendez*, 55 N.Y.2d 445, 451, 449 N.Y.S.2d 946, 434 N.E.2d 1324).  It is well established that "[w]here . . . the opposing party 'opens the door' on cross-examination to matters not touched upon during the direct examination, a party has the right on redirect 'to explain, clarify and fully elicit [the] question only partially examined' on cross-examination" (*id.*).  "[A] trial court should decide 'door-opening' issues in its discretion, by considering whether, and to what extent, the evidence or argument said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression" (*People v. Massie*, 2 N.Y.3d 179, 184, 777 N.Y.S.2d 794, 809 N.E.2d 1102).  In our view, once defense counsel elicited selected portions of the prior statement of the witness on cross-examination, the prosecutor was free to elicit the balance of the statement in order to give the evidence before the jury its full and accurate context.  Contrary to [Gonzales's] further contention on this point, the court "allow[ed] [only] so much additional evidence to be introduced on redirect as [was] necessary to 'meet what ha[d] been brought out in the meantime upon the cross-examination'" (*Melendez*, 55 N.Y.2d at 452, 449 N.Y.S.2d 946, 434 N.E.2d 1324).

*Gonzales*, 43 N.Y.S.3d at 617-18.

Gonzales fares no better on federal habeas review.  The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.  *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived

the petitioner of due process because it was so pervasive that it denied the petitioner a fundamentally fair trial. *See Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

Here, Gonzales's evidentiary error claim is based on a New York state law which prohibits corroborating trial testimony with pretrial statements of that witness. *People v. McDaniel*, 81 N.Y.2d 10, 16 (N.Y. 1993). Such testimony is admissible, however, if, upon cross-examination, the witness's testimony is challenged as having been recently fabricated. *Id.* at 18; *see also People v. Ramos*, 83 N.Y.S.3d 580, 582 (N.Y. App. Div. 2018), *leave denied*, 32 N.Y.3d 1128 (N.Y. 2018) (finding that, where counsel challenged the testimony of a witness as a recent fabrication, the trial court "correctly admitted the prior consistent statement of the complainant on direct examination of a law enforcement witness"). Gonzales argues, as he did on direct appeal, that counsel did not "directly or inferentially" raise a claim of recent fabrication such that the exception rule would apply. But as this argument involves only the application of state law and does not present any constitutional issues, it does not provide a basis for habeas review. *See Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013) (noting that there is no "Supreme Court case that clearly establishes that the admission of evidence that improperly bolsters a prosecution witness's testimony constitutes a violation of the Fourteenth Amendment."); *see also Bryson v. Sheahan*, No. 11-CV-0749, 2013 WL 5502835, at *24 (E.D.N.Y. Oct. 1, 2013) ("Courts in this circuit have repeatedly held that 'the concept of bolstering really had no place as an issue in criminal jurisprudence based on the United State Constitution,' and is a state law evidentiary issue.") (quoting *Castadi v. Poole*, No. 07-CV-1420, 2013 WL 789986, at *7 (E.D.N.Y. Mar. 1, 2013)).

10

Moreover, the rule upon which the Appellate Division relied in finding the questioning proper—that the opening up of a part of a transaction in cross-examination opens up an inquiry into the transaction "in [its] entirety,"—is a likewise a long-recognized evidentiary rule in federal jurisprudence as well. *See Carver v. United States*, 164 U.S. 694, 696-97 (1897); *Gilmer v. Higley*, 110 U.S. 47, 50 (1884). The instant case is comparable to *United States v. Maultasch*, 596 F.2d 19 (2d Cir. 1979), where the Second Circuit Court of Appeals stated:

> Maultasch also argues that the district court erred in permitting Truen to testify on re-direct to Helman's prior consistent statements. The trial court proceeded, however, on the basis that Maultasch's counsel opened the door on cross-examination by asking Truen whether he and Helman had had discussions "concerning the Galaxy arrangements" before and after a meeting with appellants. We believe that Judge Frankel correctly admitted this evidence as to "precisely what those discussions were," the subject of the re-direct testimony.

*Id.* at 25. Having brought out on cross-examination a part of what Stachurcki had previously said, Gonzales cannot now complain that the prosecutor brought out the rest of the prior statement on re-direct examination. In any event, Gonzales has not shown how this testimony could have served to have denied him a fair trial. Gonzales is therefore not entitled to federal habeas relief on this ground.

### B.   **Prosecutorial Misconduct - Grand Jury** (Ground 2)

Gonzales next contends that the prosecutor committed misconduct during the grand jury proceedings by acting as a witness , usurping the role of the grand jury, and improperly bolstering the eyewitness identification made by Stachurski. According to Gonzales, the alleged misconduct tainted the grand jury proceedings, at which Stachurski testified that he did not see who shot Olmo. Gonzales avers that the remaining evidence was insufficient to support the indictment, which should have been dismissed.

11

However, Gonzales' subsequent conviction on the charges in the indictment forecloses any potential relief with respect to such claim.  For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt.  *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted.  Therefore, the convictions must stand despite the [grand jury] rule violation.").  In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)).  Accordingly, Gonzales's defective grand jury claim also fails on federal habeas review.

## C.  <u>Ineffective Assistance of Counsel</u> (Ground 3)

Gonzales additionally avers that defense counsel was ineffective for failing to present expert witness testimony on faulty identifications and for failing to request a missing witness instruction.  According to Gonzales, counsel should have retained and called an expert to testify on identification issues because "the case depended entirely on Stachurski's identification," which he contends was "particularly weak."  Gonzales likewise faults counsel for not requesting a missing witness instruction after the People rested its case without calling Joshua Kirkland,

who observed the shooting and testified at the pre-trial *Wade* hearing.  The Appellate Division

rejected these claims on direct appeal as follows:

> Contrary to the contention of [Gonzales], he received effective assistance of counsel (*see generally People v. Baldi*, 54 N.Y.2d 137, 141, 444 N.Y.S.2d 893, 429 N.E.2d 400).  Defense counsel's failure to obtain an expert on identification evidence does not constitute ineffective assistance of counsel inasmuch as "'[Gonzales] has not demonstrated that such testimony was available, that it would have assisted the jury in its determination or that he was prejudiced by its absence'" (*People v. Jurgensen*, 288 A.D.2d 937, 938, 732 N.Y.S.2d 815, lv. denied 97 N.Y.2d 684, 738 N.Y.S.2d 299, 764 N.E.2d 403).  Furthermore, "[d]efense counsel's failure to request a missing witness charge did not constitute ineffective assistance of counsel [inasmuch as t]here was no indication that the witness would have provided noncumulative testimony favorable to the People" (*People v. Smith*, 118 A.D.3d 1492, 1493, 988 N.Y.S.2d 819, lv. denied 25 N.Y.3d 953, 7 N.Y.S.3d 282, 30 N.E.3d 173).  Lastly, [Gonzales] failed to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged error in failing to request an "expanded" single eyewitness jury instruction (*see generally People v. Stanley*, 108 A.D.3d 1129, 1130, 970 N.Y.S.2d 136, lv. denied 22 N.Y.3d 959, 977 N.Y.S.2d 190, 999 N.E.2d 555).

*Gonzales*, 43 N.Y.S.3d at 618.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a

defendant must show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a

reasonable probability that the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376,

1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at

393-95.  Thus, Gonzales must show that his counsel's representation was not within the range of

competence demanded of attorneys in criminal cases, and that there is a reasonable probability

that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,*

474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard.  "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness."  *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)).  The difference is in the second prong.  Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different.  "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'"  *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)).  "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'"  *Id*. (quoting *Benevento*, 697 N.E.2d at 588).  "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'"  *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard.  *Turner*, 840 N.E.2d at 126.  "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only

demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).  The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard.  *Id.* at 124, 126.  The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id.* at 125.

Gonzales's ineffective assistance claim must fail, however, even under the more favorable New York standard.  With respect to his claim that counsel should have retained an expert witness who could have opined on identification issues, it is unlikely that, but for the omission of expert testimony regarding the eyewitness identifications, the outcome of Gonzales's case would have been different.  Three eyewitnesses, two of whom were familiar with Gonzales, placed him at the bar in question of the night of the murder.  Two of those witnesses saw Gonzales confront Olmo immediately before hearing gunfire and then seeing Gonzales running away.  Given the fact that at least two of the witnesses were familiar with Gonzales and identified him shortly after the shooting, it is not clear that the trial court would have even permitted expert testimony regarding the inaccuracy of eyewitness identifications, much less than such proffered testimony would have affected the verdict.

Similarly, the Court cannot find unreasonable the Appellate Division's determination that Gonzales failed to show that Kirkland's testimony would have been both noncumulative and favorable to the People such that Kirkland would qualify as a "missing witness" under New York law.  Because Gonzales fails to prove that a missing witness instruction was warranted, he necessarily fails to show that counsel was ineffective for failing to request such instruction.

Gonzales is therefore not entitled to relief on either argument advanced in support of his ineffective assistance claim.

**D.      Verdict Against the Weight of the Evidence** (Ground 4)

Gonzales next argues, as he did in his counseled appellate brief, that the verdict was against the weight of the evidence presented at trial.  As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review.  *See McKinnon v. Superintendent*, *Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted).  "A weight of the evidence argument is a pure state law claim grounded in [Criminal Procedural Law ("CPL")] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted).  The Court therefore denies Gonzales's weight of the evidence claim on that basis.

Moreover, even if Gonzales had properly raised before this Court a sufficiency of the evidence claim, he would not be entitled to relief.[2]  As articulated by the Supreme Court in

---

[2]      At least some federal courts in this Circuit have concluded that presenting a weight of the evidence claim without more also raises a federal sufficiency of the evidence claim for purposes of habeas exhaustion.  *See, e.g.*, *Williams v. LaValley*, No. 9:12-cv-01141, 2014 WL 1572890, at *3 (N.D.N.Y. Apr. 17, 2014); *Martin v. Brown*, No. 08-CV-0316, 2010 WL 1740432, at *7-8 (E.D.N.Y. Apr. 29, 2010).  Indeed, the Second Circuit has suggested in dicta that a petitioner who raises a state law weight of the evidence claim on direct appeal has both raised and exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes.  *See Liberta v. Kelly*, 839 F.2d 77, 80 n.1 (2d Cir. 1988); *see also Wilson v. Heath*, 938 F. Supp. 2d 278, 290 (N.D.N.Y. 2013) (noting that "the Second Circuit [in *Liberta*] has

*Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76;

---

suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes"). In an abundance of caution, this Court will assume that the Second Circuit will ultimately clearly hold that, for exhaustion purposes, the presentation of a weight of the evidence claim is sufficient to exhaust a federal sufficiency of the evidence claim and address the merits of the claim.

*see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim, Gonzales attacks the value of the evidence against him by alleging that the identification testimony of the eyewitnesses was unreliable and incredible due to the primary witness's intoxication and the "chaotic environment" circumstances of the shooting, .  But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses).  Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Here, two witnesses placed Gonzales at the bar on the night in question, one of whom saw Gonzales arguing with Olmo.  Two witnesses placed Gonzales in a location where he could have shot Olmo at the time of the shooting, and one of the witnesses testified that he saw Gonzales shoot Olmo with a gun.  The location of the victim's body in relation to the spent shells supported the testimony of the two witnesses to the shooting.  All of this evidence was

18

before the jury, who, after having an opportunity to review a video record that captured part of the area at the time the shooting occurred, apparently chose to credit the People's witnesses.

Although it might have been possible to draw a different inference from the evidence presented at trial based on the inconsistencies and motivations identified by Gonzales, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Gonzales bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found proof that Gonzales was guilty of second-degree murder and second-degree criminal possession of a weapon, especially considering the double deference owed under *Jackson* and the AEDPA. Gonzales therefore cannot prevail on an insufficiency of the evidence claim either.

### E.   <u>**Prosecutorial Misconduct**</u> (Ground 5)

In Ground 5, Gonzales claims that the prosecution committed misconduct by bolstering the credibility of its witnesses, diluting the burden of proof, eliciting damaging hearsay statements and displaying prejudicial photographs to the jury. Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 485

U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667 (1985)).  Under this standard, a petitioner must show there is a reasonable probability the error complained of affected the outcome of the trial—*i.e.*, that absent the alleged impropriety, the verdict probably would have been different.

Gonzales fails to satisfy this heavy standard with respect to any of his contentions.  As an initial matter, his arguments with respect to many of the instances of alleged misconduct are procedurally barred from federal habeas review.  Specifically, Gonzales did not object to the prosecutor's use of a jigsaw puzzle, the prosecutor's display of the victim's autopsy, or the prosecutor's reference in redirect examination to Stachurski's fear of being labeled a "snitch."  As to those contentions, the Appellate Division found that Gonzales "failed to preserve his contention for [appellate] review."  *Gonzales*, 43 N.Y.S.3d at 618.  "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim."  *Harris*, 489 U.S. at 262.  In finding the majority of Gonzales's claim unpreserved for appellate review, the Appellate Division relied upon CPL §§ 330.30(1) and 470.05(2), New York's contemporaneous objection rule, which "provides that, with a few exceptions . . . New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings," *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011).

New York's contemporaneous objection rule has long been considered an "adequate and independent ground" that bars federal habeas review.  *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011); *see also Downs*, 657 F.3d at 102-04.  As the record supports the Appellate Division's conclusion that Gonzales failed to raise the majority of his challenges before the trial

20

court, the Appellate Division properly applied CPL § 470.05(2), and Gonzales's claim is largely subject to dismissal on that basis.

In any event, Gonzales fails to show that the Appellate Division was unreasonable in concluding that, in the alternative, Gonzales was not entitled to relief on the merits of any portion of his claim. Gonzales complains that the prosecutor referred to the analogy of a partially-completed jigsaw puzzle. But an independent review of the record reflects that the prosecutor's reference to the jigsaw puzzle was a fair response to defense counsel's use of a jigsaw puzzle metaphor to argue that there were significant gaps in the People's evidence.[3] *See Knight v. Walsh*, 524 F. Supp. 2d 255, 287 (W.D.N.Y. 2007).

---

[3]     The Sixth Circuit Court of Appeals recently expressed concern over such analogy in the direct appeal of a federal conviction:

> The use of this metaphor for the beyond-a-reasonable-doubt standard was also improper. One can easily imagine trying to put together a 1000-piece jigsaw puzzle based on the picture on the box that the puzzle came in. Whether half of the puzzle pieces are missing or only ten of them are missing, one could still piece together enough of the puzzle to be able to recognize that it resembled the picture on the box. Accordingly, jurors could understand the metaphor to describe a far less demanding standard of proof than true proof beyond a reasonable doubt.

*United States v. Bradley*, 917 F.3d 493, 508 (6th Cir. 2019).

The Sixth Circuit nonetheless concluded that "the use of this metaphor was not flagrant misconduct requiring reversal under the plain-error standard." *Id.* As discussed above, the "narrow" standard of review employed for due process claims in § 2254 cases is substantially more deferential to the lower court decision than the plain error standard employed on federal direct appeal. This is particularly true here given that, as aforementioned, it appears to have been defense counsel that introduced the concept of the puzzle analogy to the jury. In any event, there is simply no United States Supreme Court authority indicating that a prosecutor's use of the jigsaw puzzle analogy rises to the level of a federal constitutional violation. In the absence of any clearly established federal law on this issue, AEDPA relief is foreclosed. *See Carey*, 549 U.S. at 77.

Gonzales also contends that he was deprived of due process by the prosecutor's use of Olmo's autopsy, which the prosecutor displayed while commenting on how little the jury knew about the victim's life, because it impermissibly appealed to the jury's sympathies.  Similarly, Gonzales challenges on the same ground certain comments made by the prosecutor, who urged the jury not to acquit Gonzales simply because the eyewitnesses were reluctant to speak to the police, and to not their let prejudices about the witnesses or the victim affect their deliberations. But the photo and comments at issue are less egregious than the types of statements that the Supreme Court has found to be insufficient to establish a due process violation based on prosecutorial misconduct.  *See Darden*, 477 U.S. at 180 n. 10-12 (prosecutor did not deprive defendant of right to fair trial where prosecutor urged jury to impose death penalty by arguing that "as far as I am concerned, . . . [the defendant is] an animal," and "I wish [the decedent] had a shotgun in his hand . . . and blown [the defendant's] face off.  I wish that I could see him sitting here with no face, blown away by a shotgun").

Finally, Gonzales argues that the prosecutor impermissibly vouched for Stachurski's credibility.  It is well-established that "[a]ttorney statements vouching for the credibility of witnesses are generally improper because they imply the existence of" evidence not before the jury.  *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (quoting *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994)).  Prosecutorial "vouching," in particular, is improper because it "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004) (quoting *United States v. Young*, 470 U.S. 1, 18-19 (1985)).  Here, however, a fair reading of the record supports that the prosecutor was merely arguing that the

witnesses (who did not know each other) would not have corroborating accounts unless their testimony was truthful.  The prosecutor's comments did not suggest that he was relying on any extra-judicial evidence, and therefore did not constitute vouching.  *See United States v. Young*, 470 U.S. 1, 18-19 (1985) (prosecutor's statement evincing "belief . . . [that] contained no suggestion that he was relying on information outside the evidence presented at trial" does not implicate due process).  In sum, Gonzales cannot prevail on any argument advanced in support of his prosecutorial misconduct claim either.

**F.   Unduly Suggestive Photo Array** (Ground 6)

Gonzales further avers that the photographic array identification procedure used in his case was unduly suggestive and deprived him of a fair trial.  The admission at trial of identification testimony derived from an impermissibly suggestive photo array may violate a criminal defendant's right to due process.  *See United States v. Thai*, 29 F.3d 785, 807-08 (2d Cir. 1994).  "In general, a pretrial photographic identification procedure used by law enforcement officials violates due process if the procedure 'is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misrepresentation.'"  *Jarrett v. Headley*, 802 F.2d 34, 40-41 (2d Cir. 1986) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).  "Case law has developed no requirement, however, that photos in an array present only individuals who match petitioner's appearance in every detail."  *Velazquez v. Poole*, 614 F. Supp. 2d 284, 300-01 (E.D.N.Y. 2007); *Jarrett*, 802 F.2d at 41 ("It is not required . . . that all of the photographs in the array be uniform with respect to a given characteristic.").  Rather, "[d]ifferences among the physical characteristics of individuals in a photo array are constitutionally permissible, provided that they are not significant enough to suggest that the

defendant was the culprit." *Velazquez*, 614 F. Supp. 2d at 301; *see United States v. Bautista*, 23 F.3d 726, 731 (2d Cir. 1994).

The Appellate Division's conclusion on direct appeal that the photo array did not create a substantial risk that Gonzales was unfairly singled out for identification was neither unreasonable nor contrary to federal law.  Gonzales argues, as he did on direct appeal, that the photo array was unduly suggestive because there were only two other Hispanic men in the array, one of which had "visible neck tattoos and [wa]s clearly heavier than the other individuals," and "[t]he background of [Gonzales]'s photograph [wa]s also considerably lighter than the other photographs."  But a review of the photo array supports that the differences among the physical characteristics of the six young men shown in the array was not significant enough to suggest to an identifying witness that Gonzales was likely to be the culprit.  *See See Velazquez*, 614 F. Supp. 2d at 301 (finding photo array not unduly suggestive where the array showed men of similar age, complexion, facial hair, eye color and hair color and style); *United States v. Valdez*, No. S1 92 Cr. 76, 1993 WL 14650, at *3 (S.D.N.Y. Jan. 14, 1993) (photo array not unduly suggestive where four of the five men pictured had skin color and facial hair comparable to the defendant).  Gonzales is therefore not entitled to relief on this ground.

**G.**   **Harsh and Excessive Sentence** (Ground 7)

Gonzales further avers that his sentence of 25 years to life imprisonment is harsh and excessive.  It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature);

*Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law).  Here, under New York Penal Law §§ 70.00(2)(a), 3(a)(i), and 125.25(1), the court was required to sentence Gonzales to a sentence of 15 years to life imprisonment up to 25 years to life.  Gonzales has never disputed, and does not dispute here, that his sentence of 25 years to life imprisonment is within the applicable range .

And to the extent that Gonzales's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle.  *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1).  "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'"  *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)).  Here, the sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments."  *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not

warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment). Gonzales is therefore not entitled to relief on his sentencing claim in any event.

**H.**    **Denial of Right to be Present at Trial** (Grounds 8, 9, 11)

Gonzales additionally argues, as he did in his *pro se* supplemental brief on direct appeal, that he was deprived of his right to be present at all material stages of his trial. A criminal defendant's right to be present at trial is rooted in the Confrontation Clause of the Sixth Amendment, which guarantees a defendant the right to be present at trial to confront the witnesses and evidence against him. *United States v. Tureseo*, 566 F.3d 77, 83 (2d Cir. 2009) (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985)); *see also Grayton v. Ercole*, 691 F.3d 165, 170 (2d Cir. 2012). "[T]his right to be present has been extended to other critical stages of trial beyond those related to the defendant's rights to confronting witnesses and evidence." *Tureseo*, 566 F.3d at 83. A defendant "has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Id.* (internal quotation marks and citation omitted); *see also Faretta v. California*, 422 U.S. 806, 819 n.15 (1975) (stating that a criminal defendant "has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings"); *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994) ("Due Process requires that a defendant be present at all stages of the trial to the extent that a fair and just hearing would be thwarted by his absence.") (internal quotation marks and citation omitted)).

Here, however, as the Appellate Division reasonably determined, Gonzales fails to show that he was absent from a material stage of his trial.  In his supplemental brief on direct appeal, Gonzales refers to bench and sidebar conferences held between the judge, the prosecutor, and defense counsel to discuss legal issues.  Gonzales does not argue, and he fails to demonstrate, that these conferences either required Gonzales's presence or that his absence from them frustrated the fairness of his trial, and an independent review of the trial transcript provides no such support either.  Notably lacking from the instant Petition is any claim of prejudice as a result of Gonzales's exclusion from sidebar and bench conferences; nor is there any reason to conclude that Gonzales's presence at such conferences would have had any "reasonably substantial" relation to his opportunity to defend against the charges.  *See Wilson v. Bennett*, 188 F. Supp. 2d 347, 356 (S.D.N.Y. 2001).  Consequently, Gonzales's absence at the bench and sidebar conferences did not substantially affect his ability to defend his case, and he is not entitled to relief on this claim.  *See Gaiter v. Lord*, 917 F. Supp. 145, 152 (E.D.N.Y. 1996) (concluding that petitioner's presence at sidebar was not required because it would not have had a substantial effect on her ability to defend).

Gonzales also argued on direct appeal that the Appellate Division should remit the matter for a reconstruction hearing to adjudicate the merits of this due process claim.  Gonzales's inclusion of that argument in the instant Petition, construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), may indicate that Gonzales believes he is entitled to an evidentiary hearing in this Court on his claim that he was deprived of his right to be present at all material stages of his trial.  But the AEDPA requires that a petitioner must allege a colorable claim for relief to obtain an evidentiary hearing.  *See Schriro v. Landrigan*, 550 U.S. 465, 474-75

(2007).  As there is no support in the record or the instant Petition for Gonzales's claim that he

was excluded from a material stage of his trial, Gonzales fails to show that it is a colorable claim

warranting development in an evidentiary hearing.

**I.**     **Failure to Solicit Equivocal Answers from Potential Jurors** (Ground 10)

Finally, Gonzales claims that the trial court erred during jury selection when it

questioned jurors in a blanket fashion and did not obtain individual, unequivocal answers to its

questions.  The Appellate Division denied this claim on procedural grounds, finding that

Gonzales failed to preserve such contention for appellate review.  As more thoroughly discussed

*supra*, the Appellate Division's reliance on New York's contemporaneous objection rule renders

the claim procedurally barred from federal habeas review here.

In any event, Gonzales's claim is based on CPL § 270.15, which governs the procedures

in New York regarding examination of prospective jurors.  To the extent Gonzales again

contends that the trial court's actions violated § 270.15, such claim presents only a state law

issue not cognizable on federal habeas review.  *See Estelle*, 502 U.S. at 67-68 ("We have stated

many time that 'federal habeas corpus relief does not lie for errors of state law.");  *see also Afrika

v. Conway*, No. 06-CV-0280, 2011 WL 582618, at *9 (W.D.N.Y. Feb. 9, 2011) (holding

violation of CPL § 270.20 not cognizable on federal habeas review).  Moreover, Gonzales does

not point to, and this Court is not aware of any, clearly-established Supreme Court authority

disapproving of the trial court's procedures in questioning the jurors collectively, particularly

given that Gonzales has provided no evidence that the jury who convicted him was anything

other than fair and impartial.  Lacking such clearly-established Supreme Court authority, it

cannot be concluded that the appellate court's ruling contravened or unreasonably applied

federal law.  *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately

addressed a claim, a federal court cannot find a state court ruling unreasonable).  Gonzales is

therefore not entitled to relief on this claim in any event.

V. CONCLUSION

Gonzales is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a

certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 17, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge